IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KATHERINE U.,[1]

             Plaintiff,                        Civ. No. 6:18-cv-02232-AA

      v.                                  **OPINION & ORDER**

COMMISSIONER OF SOCIAL
SECURITY,

             Defendant.

_____

AIKEN, District Judge:

      Plaintiff Katherine U. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is AFFIRMED and this case is DISMISSED.

## BACKGROUND

      On September 16, 2014, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income, both alleging disability beginning on April 30, 2002. Tr. 243-52. The application was denied initially and upon reconsideration and, at Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ")

_____

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

on October 26, 2017.  Tr. 37-84.  On March 14, 2018, the ALJ issued a decision finding

Plaintiff not disabled.  Tr. 10.  On October 25, 2018, the Appeals Council denied

review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1.  This

appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial

gainful activity by reason of any medically determinable physical or mental

impairment which . . . has lasted or can be expected to last for a continuous period of

not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  "Social Security Regulations set

out a five-step sequential process for determining whether an applicant is disabled

within the meaning of the Social Security Act."  *Keyser v. Comm'r*, 648 F.3d 721, 724

(9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a
> substantially gainful activity? (2) Is the claimant's impairment severe?
> (3) Does the impairment meet or equal one of a list of specific
> impairments described in the regulations? (4) Is the claimant able to
> perform any work that he or she has done in the past? and (5) Are there
> significant numbers of jobs in the national economy that the claimant
> can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four.  *Bustamante*,

262 F.3d at 953.  The Commissioner bears the burden of proof at step five.  *Id.* at 953-

54.  At step five, the Commissioner must show that the claimant can perform other

work that exists in significant numbers in the national economy, "taking into

consideration the claimant's residual functional capacity, age, education, and work

experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).   If the Commissioner fails to meet this burden, the claimant is disabled.   20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).   If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled.   *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis.   At step one, the ALJ found that Plaintiff met the insured status requirements through September 30, 2008 and had engaged in a period of substantial gainful activity since the amended alleged onset date ("AOD") from April 1, 2005, through June 30, 2005, but had not otherwise engaged in substantial gainful activity since July 1, 2005.   Tr. 16.

At step two, regarding Plaintiff's Title XVI claim, the ALJ found that Plaintiff had the following medically determinable impairments through the date last insured: "obesity, post-traumatic stress disorder (PTSD), major depressive disorder, somatic symptom disorder, neurocognitive disorder secondary to traumatic brain injury (TBI), panic disorder, history of substance use disorder, degenerative disc disease, facet disease, sciatica, spoudylosis, and high blood pressure. Tr. 19.   The ALJ did not find Plaintiff's irritable bowel syndrome constituted a medically determinable impairment.   *Id.*   At step three, the ALJ found, after analyzing the record and relevant medical data, that Plaintiff's impairments "[do] not meet or medically equal the criteria of any impairment listed impairments described in Appendix 1 of the Regulations (20 CFR, Part 404, Subpart P, Appendix 1)."   *Id.*

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) as "work that does not require more than frequent balancing, stooping, kneeling, crouching, crawling, or climbing; that consists of simple, routine tasks; that does not require coordination with other individuals; that provides clear, direct supervision; that does not require independent vocational goal setting; that does not require interaction to perform job tasks; and that does not require adaptation to changes in the work setting or work processes." Tr. 22.

At step four, the ALJ determined that Plaintiff was unable to perform past relevant work. Tr. 28. At step five, the ALJ determined that Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, specifically that Plaintiff could perform work as Basket Filler, Assembler, and Garment Sorter. Tr. 30. As a consequence, the ALJ determined that Plaintiff was not disabled. *Id.*

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, the court must weigh "both the evidence that supports

and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff asserts that the ALJ erred by improperly (1) discounting Plaintiff's subjective symptom testimony; (2) weighing the medical evidence; and (3) discounting lay witness evidence.

## I.    Subjective Symptom Testimony

Plaintiff argues that the ALJ erred by discounting her subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and

convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Id.*

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow prescribed courses of treatment, or claimant's daily activities. *Id.*

### A.    *Plaintiff's Testimony*

Plaintiff alleges her disability began on April 30, 2002. Tr. 144. Specifically, Plaintiff has alleged her disability stems from a combination of severe anxiety and depression, nerve damage from a degenerative disc disease in her spine, and difficulty with bowel movements. *Id.*

On April 4, 2003, a year after Plaintiff's AOD, Plaintiff presented at Providence Portland Medical Center after suffering a sexual assault. Tr. 394-396. Physicians examined her and detected "facial abrasions on her forehead and cheek." Tr. 396. Aside from these wounds, treating physicians mentioned Plaintiff "moves all of her extremities equally well… has painless range of motion" and was "discharged to home in unchanged condition with her mother." Tr. 355. Plaintiff had a follow-up

appointment the next month where the treating physician noted no further physical injuries or complications from the assault. Tr. 362. Plaintiff stated to her physician that she would follow up with her primary care doctor and seek further treatment. Tr. 363.

At her administrative hearing, Plaintiff testified that before her AOD she previously worked odd jobs in metal and glass cutting in the late 1990s. Tr. 72. In 2002, shortly before her alleged onset of disability, Plaintiff worked briefly at Fred Meyer but stated that she was "fired … probably because [she] was sick." Tr. 61. Plaintiff worked at Costco for "a few months" from April 1, 2005, until June 30, 2005, Tr. 279, but was also "fired because [she] was sick." Tr. 61. Plaintiff indicated that she earned approximately 1,100.00 dollars per month. Tr. 60. Her duties included "[standing] at the door to check if people had a Costco card." Tr. 289. Under the Special Condition portion of the report, Plaintiff stated the reason she had "stopped working" was due to "physical and/or mental condition(s)." Tr. 282. In 2009, she volunteered at an animal shelter for two months where she walked and fed stray dogs. Tr. 60. Plaintiff testified that she has not worked in any capacity since July 1, 2005. *Id.*

Plaintiff testified that her back pain creates a lifestyle that "is so bad" that for at least "ten years" she "can't walk" and needs "help with pretty much everything". Tr. 47-49, 57-60, 62-65, 292-299. Plaintiff stated that she "can't bend or twist" and that "it hurts so bad to bend or twist or lean over the stove to lift pans." Tr. 294.

Plaintiff testified that she vomits on average four times a day and has done so for the past ten years. Tr. 47. She also stated that she must use the restroom "about 20 times a day," "since she was a little girl" and that she wears adult diapers when working. Tr. 64. She "sometimes" smokes "three or four cigarettes a day" and drinks alcohol, varying between "one drink every two years" and "like six beers a night." Tr. 52-53. She previously engaged in recreational marijuana use and mistakenly took "marijuana pills" for which she was hospitalized. Tr. 55. Plaintiff denied any other illicit drug use. Tr. 55. She described herself as constantly anxious with persistent headaches, which she stated no medication can alleviate. Tr. 57.

Plaintiff also submitted an Adult Function Report where she described her mental health. Tr. 292. Plaintiff described her pain and anxiety as being so debilitating that she can feed herself but that she requires assistance to dress herself, use the toilet, and brush her hair. Tr. 294. Regarding her mental attention, Plaintiff testified that she is cannot pay attention for more than twenty minutes and that she is unable to follow basic instructions, such as cooking recipes. Tr. 296.

Plaintiff explained that she currently lives with her mother and grandmother because she is unable to take care of her children, and because she herself requires constant care for her condition.. Tr. 292.

B.    *ALJ Decision*

The ALJ determined Plaintiff's medical "conditions have caused more than minimal limitations" but the evidence is "inconsistent with the degree of limitations [Plaintiff] asserted." Tr. 18. The ALJ made this determination after assessing

Plaintiff's testimony and finding inconsistencies concerning an inadequate explanation for failing to seek treatment for her mental health symptoms and an a description of severity inconsistent with the medical record.

Regarding Plaintiff's testimony about her mental health, the ALJ noted that, aside from her initial treatment following the April 2003 assault, there was "little evidence of mental health treatment in the record" and the record reflects Plaintiff did not seek any further relief regarding any treatment for her anxiety. Tr. 27. An unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment is a valid consideration for an ALJ assessing subjective symptom testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Plaintiff argues that the ALJ cannot weigh a failure to follow treatment against Plaintiff's testimony when the failure was caused by Plaintiff's mental health impairments. It is true that an ALJ should not "chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). However, as explained further below, the ALJ's determination was supported by an absence of evidence in the record regarding Plaintiff's symptoms of anxiety and their severity.

With the exception of Dr. Alvord, discussed below, evidence from Plaintiff's treating and non-treating medical professionals was inconsistent with Plaintiff's statements concerning the severity of her symptoms. Tr. 424, 427, 934. Plaintiff had sought treatment for a variety of ailments at several different healthcare facilities over the past decade. Tr. 422-476, 723-1027. Several of those visits included

Plaintiff explicitly denying back pain and treating physicians describing her range of motion as normal. *Id.* For example, On July 23, 2005, Plaintiff went to Salem Hospital after her "large puppy jumped on her, knocking her down" but denied any back pain and had full range of motion. Tr. 934. As a more recent example, Plaintiff was admitted into the Salem Hospital emergency room on June 14, 2014, after complaints of extreme pain, vomiting, and an inability to move or breathe. Tr. 423. After being told of a potentially long wait time, the medical record shows that Plaintiff "got up out of [hospital provided] wheelchair and ambulated out of the Emergency room lobby" and "state[d] she is going to leave and go to Stayton Hospital" over 16 miles away. *Id.*

The ALJ also considered Plaintiff's daily activities. Tr. 21. A claimant need not be catatonic in order to qualify as disabled, but an ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citation omitted). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* at 1113. Plaintiff testified that her days are spent lying on the couch watching television for an indeterminate amount of time or "probably a couple hours a day." Tr. 59. The ALJ found that Plaintiff stated that she could prepare simple meals, drive (though she stated that she does not drive regularly), and read. Tr. 21. She reported that she worked for a period during the adjudicatory period and

volunteered for a period at the Humane Society.  The ALJ determined that Plaintiff
had stated that she cares for her two, young children (at the time, ages four and
eleven) with help from her mother and her friend.  Plaintiff handles her own self-
care, grocery shops, prepares shopping lists, and spends time with friends and family.
Tr. 21-22.   On this record, the Court cannot conclude that the ALJ erred in
considering Plaintiff's daily activities.

Plaintiff was also evaluated by clinical psychologist Dr. Paul Stoltzfusa in
March of 2015.  Tr. 872-879.  Plaintiff reported to Dr. Stolzfusa that she had only
worked one month at Costco.  Tr. 873.  Plaintiff also explained that she quit her
previously employment at Fred Meyer because they "hired the guy that beat her up."
*Id.*  Regarding her typical anxiety, Plaintiff rated her depression and anxiety as "a
5/10 (10 is severe depression)."  Tr. 874.  She explained she was on a lot of medication
but was not currently seeing a mental health counselor.  *Id.*  She denied any suicidal
or homicidal ideations.  Tr. 877.

The ALJ also considered the medical opinion of spinal surgeon Dr. Maurice
Collada when he assessed Plaintiff's subjective symptom testimony.  Tr.23-24.  Dr.
Collada was Plaintiff's recent treating physician for several years who performed
spinal surgery on Plaintiff in 2011 and 2015.  Tr. 24, 1035-1144.  Dr. Collada's
findings assess Plaintiff's capacity for movement and threshold for pain.  *Id.*  During
Plaintiff's initial visit, Dr. Collada tested Plaintiff for a variety of illnesses and spinal
issues.  Tr. 1095.  Plaintiff tested negative for conditions relating to vomiting, nausea,
or bowel movement control.  *Id.*  Plaintiff denied any bowel problems but mentioned

urination difficulties. *Id.* Dr. Collada described Plaintiff as having a "normal" range of motion given her weight and stature and noted "patient can walk on heels and on the balls of the feet with ease." *Id.*

After her 2011 lumbar spine surgery, Dr. Collada determined that Plaintiff was "doing beautifully with regards to her back surgery and her back pain." Tr. 1117. Dr. Collada recommended an exercise plan and referred Plaintiff to a specialist assist her. *Id.*

After her April 2015 spinal surgery for a herniated disc, Dr. Collada noted there was "no recurrent disc protrusion" and "L-spine MRI was normal" with only a single disc "mildly imping[ing] on the ventral spinal cord" "without any major neutral compression." Tr. 1035. Two months later, Dr. Collada noted that Plaintiff expressed "a rather impressive and exaggerated amount of low back pain" coupled with "facial mannerisms of pain." *Id.* Plaintiff received a focal neurological exam which determined no abnormalities and Dr. Collada concluded that he did not note "any worrisome neurological problems." Tr. 1037. Dr. Collada concluded that he "did not detect any focal motor or sensory deficits," that Plaintiff was "totally intact," and advised against any "further surgical intervention." *Id.*

The ALJ gave "great weight" to State Agency medical consultants Sharon Eder and Neal Berner. Tr.18. Dr. Eder and Dr. Berner provided a non-examining medical assessment of Plaintiff in February and September of 2015. Tr. 94 -105. Their conclusions, supplemented with detailed explanations, determined that Plaintiff was capable of light work with certain restrictions relating to periods of standing and

walking. *Id.* This assessment comports with Dr. Collada's determinations and the vocational expert's determination that Plaintiff could perform qualified work. Tr. 30

Where Plaintiff testified that her issues with bowel movements work life impossible, the ALJ found this condition to be non-medically determinable. Tr. 19. Evidence in the record concerning Plaintiff's stomach irritation symptoms is notably absent or denied during many of Plaintiff's hospitalizations. Tr. 355, 362, 426, 788, 881, 905, 933, 1145. For instance, when Plaintiff was admitted to the Santiam Hospital Emergency room in early 2014, Dr. Charles Stringham noted that Plaintiff had "no bowel or bladder dysfunction." Tr. 788. Significantly, Irritable Bowel Syndrome was neither mentioned by Plaintiff nor detected by treating physicians during prior treatments. Tr. 355-371.

In sum, the Court concludes that the ALJ gave legally sufficient and supported reasons for discounting Plaintiff's subjective testimony concerning her physical and mental health symptoms.

## II.    Medical Opinion Evidence

Plaintiff asserts that the ALJ erred by discounting the opinions of examining psychologist Scott Alvord, PsyD. The ALJ is responsible for resolving conflicts in the medical record. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008)[2]. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" *Turner v. Comm'r*, 613 F.3d

---

[2] Note: The Social Security Administration has recently altered the regulation which govern the evaluation of medical evidence for claims filed on or after March 27, 2017. *Farlow v. Kijakazi*, 53 F.4th 485, 488 n.3 (9th Cir. 2022). Because this claim was filed on September 16, 2014, the older system applies.

1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted).  An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence."  *Id.*

At the request of counsel, Dr. Alvord performed a single psychological examination of Plaintiff on September 5, 2017.  Tr. 1181.  Dr. Alvord's diagnosis was that Plaintiff suffers from severe Chronic PTSD, Recurrent Major Depressive Disorder, Somatic Symptom Disorder, and an unspecified Neurocognitive Disorder that Dr. Alvord opined was from a traumatic brain injury in 2003.  *Id.*

The ALJ assigned "limited weight" to the opinion of Dr. Alvord.  Tr. 27.  The ALJ articulated several reasons why Dr. Alvord's assessment was not persuasive.  Tr. 27.  The ALJ determined that there were inconsistencies between Dr. Alvord's evaluation, Plaintiff's testimony, and the medical record.  The ALJ explained that Dr. Alvord did not perform a medical record review, but only consulted the reports of Plaintiff and her grandmother.  Tr. 27.

The ALJ noted that Plaintiff relayed to Dr. Alvord that her conditions began in 2003 after an assault where Plaintiff was "beaten within inches of life" resulting in a "crushing skull fracture" as well as "broken bones and an exacerbated back injury."  Tr. 1182.  But, the medical record and other testimony demonstrated Plaintiff's injuries were "facial abrasions and contusions," rather than skull fractures

or any broken bones.  Tr. 355.  Further, the medical record showed that Plaintiff had reported that her conditions started one year earlier than the assault, with an alleged onset date in April 2002, and that she had engaged in work at the substantial gainful activity level in 2005 after the alleged onset of these conditions.  Tr. 27.

Plaintiff also alleges that the ALJ was incorrect in determining that Dr. Alvord's assessment was "inconsistent with the claimant's reports to Dr. Stolzfus, to whom she related a much longer and more varietal history."  Tr. 27.  As discussed above, Dr. Stolzfus based his assessment on Plaintiff's treatment and detailed and accurate medical and employment history.

Also, the ALJ assigned limited weight to Dr. Alvord's opinion based on Dr. Alvord's minimal interaction with Plaintiff's medical records and because, when rendering his medical opinion, Dr. Alvord relied on Plaintiff's "incomplete work history" and Plaintiff's "inaccurate representation that there had been no abuse of alcohol or other substances." *Id.*

An ALJ does not err by providing less weight to a medical opinion when that medical opinion relies on limited or inaccurate information.  *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012).   Because Dr. Alvord was not provided a sufficient medical background and based his opinions on limited information relating to Plaintiff's alleged disability, the ALJ did not err in giving limited weight to Dr. Alvord.

Last, the ALJ noted that Dr. Alvord opined that Plaintiff's mental limitations prevented her from working, but that Plaintiff's work history conflicted with Dr.

Alvord's assessment. Specifically, the ALJ noted that Plaintiff worked during the time when Dr. Alvord stated Plaintiff's mental limitations prevented her from working. An ALJ may discount limitations that appear inconsistent with the plaintiff's level of activity. *Rollins v. Massarnari*, 261 F.3d 853, 856 (9th Cir. 2001). Accordingly, the ALJ's determination is supported by substantial evidence.

## III.    Lay Witness Testimony

Plaintiff asserts that the ALJ erred by discounting the lay witness testimony. An ALJ must take into account lay witness testimony as to the severity of a plaintiff's symptoms. *Nguyen v. Charter*, 100 F.3d 1462, 1467 (9th Cir. 1996). However, the ALJ may discount lay witness testimony by providing "reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). Further, any incorrect assessment of a lay witness is considered harmless when it comports to the plaintiff's own testimony. *Molina*, 674 F.3d at 1122.

Plaintiff's mother and close friend submitted an Adult Function Report in support of Plaintiff's application. Tr. 292, 300. They alleged that Plaintiff suffered chronic pain and inability to assist in basic activities such as daily chores and watching her children. *Id.* Plaintiff's mother testified that Plaintiff has "zero tolerance" for stress and is incapable of walking more than 15 feet without a cane. Tr. 306. Plaintiff's mother reported that Plaintiff has suffered from physical issues since elementary school and that Plaintiff's bowel irritation issues have prevented her from gainful employment. *Id.*

The ALJ assigned "little weight" to Plaintiff's mother's testimony because that testimony was "inconsistent" with Plaintiff's activities, the medical record, and

medical opinion evidence.  Tr. 28.   For example, Plaintiff's mother claimed Plaintiff "cannot bend" and "cannot lift anything," yet during a follow up appointment with Dr. Collada, Plaintiff was able to quickly pick up a pen he had dropped on the floor. Tr. 300, 1037.  Further allegations that Plaintiff is unable to use the bathroom and dress herself are also not supported by the medical record or Plaintiff's testimony. Tr. 301, 900, 916   Descriptions of Plaintiff's ability to walk and engage in regular activities is also not consistent with Plaintiff's own testimony and the medical record discussed above.  Tr. 305-307.  These inconsistencies with the record constitute "germane reasons" to discount lay witness statements.  Furthermore, the ALJ is permitted to discredit lay witness testimony based on subjective symptom testimony that has been discredit.  Further, because the lay-witness testimony restates the Plaintiff's subjective symptom testimony, any error regarding their testimony would still be found to be a harmless error even if credited as true.

## IV.    Substantial Gainful Activity

Plaintiff asserts that the ALJ committed error, albeit harmless error, in determining that Plaintiff was substantially and gainfully employed in 2005 when she earned $3,367.05 from Costco.  ECF No. 17 at 5.  "At step one of the sequential evaluation, the ALJ evaluates whether a claimant engaged in substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).  The ALJ will not find a claimant disabled if they are found to have engaged in substantial gainful activity.  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

Here, the record shows that Plaintiff worked at Costco during a three-month period, averaging more than 1,100.00 dollars each month.  Tr. 15, 279.  In other

reports, Plaintiff indicated she worked eight hours a day, four days a week.  Tr. 289.

In assessing a claimant's substantial gainful activity, the "primary consideration will

be the earnings [the claimant] derive[d] from the work activity."  20 C.F.R. §§

404.1574(a)(1), 416.974(a)(1).

In this case, Plaintiff's earnings during the alleged period of disability exceeded

the minimum amounts considered substantial gainful activity.  Plaintiff contends

that her total hours worked equaled less than three months, which constitutes an

"unsuccessful work attempt" and thus is not substantial gainful employment for

purposes of the Act.

The regulations recognize that work that lasts six months or less may be

considered an "unsuccessful work attempt" that does not count as substantial gainful

activity.  20 C.F.R. §§ 404.1574(c)(1), 416.974(c)(1).  However, such work will be

considered an unsuccessful work attempt only if the claimant stopped working and

her earnings fell below the substantial gainful activity earnings level because of her

impairment or because of the removal of special conditions that took into account her

impairment and permitted her to work.  20 C.F.R. §§ 404.1574(c)(3), 416.974(c)(3).

Here, the ALJ determined that none of the above elements were met.  Tr. 16.

First, Plaintiff never claimed she performed the work with special conditions.

Second, the evidence does not show that Plaintiff stopped work because of her

impairments.  Tr. 16.  For example, although Plaintiff alleged that she stopped

working after she was terminated due to vomiting and being rushed to the hospital,

the medical reports from this period contradicted these allegations.  Tr. 16, 935.

Specifically, her doctor reported some symptoms related to Plaintiff's pregnancy (i.e., abdominal cramping), but otherwise did not describe any vomiting or pain. Tr. 16, 935. The record shows that Plaintiff denied nausea, vomiting, fevers, chills, or headache. Tr. 935.

Given that evidence, the ALJ reasonably determined that Plaintiff's work at Costco from April 1, 2005, to June 30, 2005, was not an unsuccessful work attempt. Tr. 16. Further, Plaintiff concedes in her Opening Brief that any error by the ALJ here was harmless. ECF No. 17 at 6. The ALJ made an alternative finding as to this three-month period and determined that, even if Plaintiff had not engaged in substantial gainful activity, she had not shown that she had any impairments that were severe. Tr. 160. As Plaintiff has not shown harm, any error by the ALJ is not a basis for the Court to overturn the ALJ's decision. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012).

## V.    Severe Impairment

Plaintiff alleges that the ALJ was incorrect in assessing their impairments as not severe. A "severe impairment" is any impairment or condition that significantly limits one's ability to perform work functions or activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, Plaintiff has not met their burden of demonstrating such an impairment exists for the statutory twelve-month period. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505, 404.1509, 416.905, 416.909. As discussed above, the inconsistencies and contradictions between Plaintiff's testimony and her medical record prevented Plaintiff from being able to adequately demonstrate a "severe impairment." Most significantly, the ALJ noted that Plaintiff alleged her AOD one

year before her sexual assault and "the record contains very little medical evidence" supporting a claim of a severe impairment during that period. Tr. 17. Further, the ALJ explained that while Plaintiff had received medical attention for a variety of issues, none of these issues established evidence of a severe impairment that prevented her from working. *Id*. A lack of follow up treatment for her mental treatment stemming from the sexual assault and a failure to follow Dr. Collada's physical therapy recommendations also belies evidence of a severe impairment. The ALJ assertion that Plaintiff's explanation for her final work period is consistent with the medical record is also a reasonable interpretation. *Id*. Finally, Plaintiff has not shown any alleged impairment has lasted or expected to last for 12 months. Because of this lack of convincing evidence, the ALJ reasonably concluded Plaintiff was not severely impaired. Tr. 19.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this case is DISMISSED. Final judgment shall be entered accordingly.

It is so ORDERED and DATED this ____10th____ day of May 2023.


 /s/Ann Aiken                                        
ANN AIKEN
United States District Judge